UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DAVID J. WILBURN, JR., et al.                                                         PLAINTIFFS


v.                                                                  CIVIL ACTION NO. 3:13-cv-384-CRS


UNITED STATES OF AMERICA                                                              DEFENDANT


**MEMORANDUM OPINION**

This matter is before the court on motion of the Defendant, the United States of America, for summary judgment in favor of the Defendant on the Plaintiffs' claims, pursuant to Fed. R. Civ. P. ("Rule") 56(c). For the reasons stated herein, the court will **GRANT** the Defendant's motion.

**I.     BACKGROUND**

1. Factual Background

On September 11, 2007, United States Army Sgt. Brent Burke ("Burke") fatally shot his estranged wife, Tracy Burke ("Tracy"), and Tracy's mother-in-law from a former marriage, Karen Comer ("Comer"), in Comer's home in Rineyville, Kentucky. (DN 22, ¶ 2.) Tracy and Burke's two minor children, Eion M. Burke and Raegan A. Burke, and Tracy's minor son from her former marriage, Matthew T. Pete, were present at Comer's home at the time of the shooting. (*Id*. at ¶ 3.) On May 8, 2012, a seven-person military tribunal found Burke guilty of the murders of Tracy and Comer. (*Id*. at ¶ 4.)

According to the Plaintiffs, the underlying tragedy of this action did not come without warning. The Plaintiffs contend that Burke began demonstrating violent tendencies in 2005,

while he was deployed in Egypt. There, Burke allegedly made numerous concerning statements to others, including comments that he would kill himself and/or Tracy if Tracy left him. (DN 90-4, 5.) These statements twice caused Burke to be put under supervision. (DN 90-6.) After purportedly telling another soldier that he had found the perfect location to murder his platoon leader, the Army removed Burke from his platoon, transferred him to mental health counseling, and ultimately returned him early to Fort Campbell, Kentucky. (DN 90-4, 5.) For a time, Burke continued to receive mental health counseling and prescription medication to treat various mental health issues. (*Id*. at 6 – 7.) In January 2006, the Army released Burke to active duty and deployed him to Afghanistan. (DN 90-4, 7.) Yet, Burke allegedly continued to exhibit violent tendencies, especially towards detainees at the detention center where he was acting as a detention center guard. (*Id*. at 8.)

Upon returning from deployment, Burke lived off-base with Tracy and their children in Burke's home in Clarksville, Tennessee. Throughout the summer of 2007, the Plaintiffs allege that the Army knew that Tracy feared Burke. (DN 90-4, 12.) The Army also was aware of two domestic violence incidents between Tracy and Burke in which the police were called to intervene.

The first reported domestic violence incident occurred in May 2007. The police responded to a call at Burke's home where "[b]oth parties gave written statements and stated no physical activity occurred." (DN 86, Exh. 5.) This incident was reported to Burke's chain of command and the Army investigated the situation pursuant to a written internal policy called "Policy 7: Command Response to Incidents of Domestic Violence" ("Policy 7"). (DN 90-4, 10; DN 90-2.) Under Policy 7, all Unit Commanders are required to respond to credible reports of domestic violence. (DN 90-4, 10.) The investigation resulted in the Army ordering a "72-hour

cooling off period" in which Burke was provided a room in the Fort Campbell barracks. (*Id*.) Burke was required to attend counseling and social services sessions and was not allowed to contact Tracy until after he spoke to a counselor. (*Id*.) Fort Campbell's Family Advocacy Program's Case Review Committee subsequently closed the matter, finding that "no further services [were] needed or requested by the family at this time." (DN 86, Exh. 5.)

After this incident, Tracy and Burke physically separated and Tracy filed for divorce. (DN 86-9.) Burke moved back into the Army barracks and a Marital Dissolution Agreement was entered on July 23, 2007. (DN 90-4, 11; DN 86-10.) On August 11, 2007, local law enforcement responded to another domestic violence incident between Tracy and Burke, to which the Army was notified. (DN 90-4, 12.) The Clarksville Police Department in Clarksville, Tennessee did not prepare a report related to this call, and the Army did not take any action in response. (*Id*.)

On September 11, Burke shot and killed Tracy and Comer in Comer's home in Rineyville, Kentucky. On April 5, 2013, the Plaintiffs, representatives of Tracy's minor children and administrators of the estates of Tracy and Comer, filed a Complaint against the United States for damages related to the shooting under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 – 2680.

2. Procedural History

In 2013, the United States filed a motion to dismiss the Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6). Therein, the United States argued that the Plaintiffs' claims were barred by the intentional tort and discretionary function exceptions of the FTCA. The court

granted the United States' motion, finding that the Plaintiffs' claims were barred by the intentional tort exception, and dismissed the case.[1] (DN 32.)

The Plaintiffs timely appealed the court's order dismissing the action. In August of 2015, the Sixth Circuit reversed and remanded the case back to this court, finding that "it is not evident from the pleadings that either the FTCA's intentional tort exception or its discretionary function exception would bar these claims." (DN 35, 2.) Over the next several years, the parties engaged in discovery efforts. Now before the court is the United States' Motion for Summary Judgment.

## II. STANDARD

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). It is the burden of the nonmoving party to "direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## III. DISCUSSION

The Plaintiffs allege that the United States beached a duty to Tracy and Comer to protect them from Burke, and as such, the United States is liable to the Plaintiffs for damages from the fatal shooting on September 11, 2007. In its motion for summary judgment, the United States

---

[1] Because the court found that each of the Plaintiffs' claims were barred under the intentional tort exception of the FTCA, the court did not consider whether the claims were barred under the discretionary function exception.

argues that the Plaintiffs have not provided sufficient evidence to show that the United States owed a duty to Tracy or Comer, and therefore that the motion should be granted. Before turning to the Defendant's motion, the court first will review the applicable law.

1. The Federal Tort Claims Act

While the United States is generally immune from suit, the FTCA provides a waiver of the federal government's sovereign immunity in certain circumstances and, in fact, is "the exclusive remedy for suits against the United States or its agencies sounding in tort." *Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011) (citing 28 U.S.C. § 2679(a)). Under the FTCA, immunity is waived when a federal government employee, acting within the scope of employment, causes personal injury or death due to a "negligent or wrongful act or omission." 28 U.S.C. § 1346(b)(1). In such instances, the federal government is "liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*. Here, the substantive law of Kentucky applies as the incidents giving rise to this action occurred in Kentucky.

However, the United States' waiver of sovereign immunity is not without limit. Section 2680 provides a list of exceptions to the FTCA. "If a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction." *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984) (citations omitted). These exceptions include intentional torts. 28 U.S.C. § 2680(h).

Under the intentional tort exception, the United States retains sovereign immunity for claims "arising out of" assault and battery, among other intentional torts. The phrase "arising out of" has been interpreted broadly by courts; not only is the United States immune from suit for any intentional acts committed by a government employee, but the United States is also immune

from suit for claims framed as the "negligent failure to prevent the assault or battery" by a government employee. *United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion) ("Section 2680(h) does not merely bar claims *for* assault and battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.") (emphasis in original).[2]

The holding in *Shearer*, however, does not categorically preclude liability for *every* claim against the United States simply because it concerns an underlying assault or battery. Two years after *Shearer*, the Supreme Court clarified in *Sheridan v. United States*, 487 U.S. 392 (1988) that the intentional tort exception does not bar claims that rest on a theory of liability "entirely independent of" the intentional tortfeasor's status as a government employee. *Id*. at 401. If the United States is subject to a duty under the applicable state law that is separate from employment status, the intentional tort exception will not bar a claim against the United States simply because the tortfeasor happened to be a government employee. As such, the court only has subject matter jurisdiction of this action if the Plaintiffs can show that the United States held an independent duty to Tracy or Comer under Kentucky Law.

2. The Sixth Circuit's Opinion

In its Opinion, the Sixth Circuit found that the Plaintiffs had stated a plausible claim for relief on two theories of liability under the FTCA independent from Burke's status as a government employee.[3] First, the Court found that the Plaintiffs adequately stated a claim that

---

[2] The plurality's reasoning in *Shearer* was later adopted by the Sixth Circuit in *Scatterfield v. United States*, 788 F.2d 395 (6th Cir. 1986). Therein, the Court found that the intentional tort exception barred a claim by a soldier's mother that the Army negligently supervised its servicemen who beat her son to death while on leave together. *Id*. at 399 – 400.

[3] The Sixth Circuit held that the Plaintiffs had not stated a plausible claim under a third theory of liability, that is, a tort claim based on an alleged duty arising from a special relationship between the Army and Tracy. The Plaintiffs pointed to no Kentucky law which would impose such a duty and as such the Court dismissed this theory of liability.

the United States is liable under a voluntary assumption of duty to Tracy and Comer. Kentucky has adopted § 323 of the Restatement (Second) of the Law of Torts ("Section 323") when assessing whether a defendant has voluntarily assumed a duty to a plaintiff. *Horn v. Horn*, 630 S.W.2d 70, 73 (Ky. 1982); *Murphy v. Second St. Corp.*, 48 S.W.3d 571, 575 n. 16 (Ky. Ct. App. 2001). Section 323 states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). In this case, the Plaintiffs argue that the Army assumed a duty to Tracy because Tracy relied upon Policy 7 and Burke's chain of command to protect her. Upon assessing this claim, the Sixth Circuit held:

> Each bare fact – that the Army did not follow its own regulations, the Sgt. Dean took and then returned Burke's gun, or that Tracy told Burke's command that she feared Burke – is not sufficient to show that the Army assumed a duty to warn or protect her. Tracy must also show that the [A]rmy took some action *upon which she relied*.

(DN 35, 9) (emphasis in original). On remand, the Sixth Circuit directed the Plaintiffs to "present evidence sufficient to enable a reasonable trier of fact to conclude that Tracy reasonably relied on some action taken by the army." (DN 35, 9.)

Next, the Sixth Circuit held that the Plaintiffs' Amended Complaint sufficiently stated a claim for relief under the duty of mental health professionals pursuant to Kentucky Revised Statute ("KRS") § 202A.400. KRS § 202A.400 imposes a duty on mental health providers to take reasonable precautions to protect victims of their patients if the "patient has communicated

to the mental health professional an actual threat of physical violence against a clearly identified or reasonably identifiable victim, or [ ] the patient has communicated to the mental health professional an actual threat of some specific violent act." KRS § 202A.400(1). Because the Plaintiffs' Amended Complaint alleges that the Army ordered Burke to attend counseling, and alleges that he had made statements about killing Tracy to numerous members of the military community, the Sixth Circuit found it plausible that Burke had communicated threats about harming Tracy or Comer to mental health professionals. The Court remanded the case for discovery on whether a duty existed to Tracy and Comer under KRS § 202A.400.

It should also be noted that the Sixth Circuit found that the discretionary function exception did not bar the Plaintiffs' claims at the pleading stage and therefore reversed and remanded on this issue. However, as the United States has not addressed the discretionary function exception in its motion for summary judgment, the court will not engage in an analysis on whether this exception applies.

3. Motion for Summary Judgement

In February of 2018, the Defendants filed the present motion for summary judgment, arguing that the Plaintiffs cannot present sufficient evidence for a reasonable trier of fact to conclude that the United States breached a duty to Tracy or Comer under either Section 323 or KRS § 202A.400. The Plaintiffs in their response concede that there does not exist sufficient evidence to support a claim under the duty of a mental health professional to warn Tracy or Comer. (DN 90, 12) ("Petitioners acknowledge having elicited no evidence to show the applicability of KRS § 202A.400."). The Defendant's motion for summary judgment therefore will be granted as to a duty under KRS § 202A.400. The only remaining issue before the court is

whether the Plaintiffs have provided sufficient evidence that the Army voluntarily assumed a duty of care to Tracy for her protection under Section 323.

As noted by the Sixth Circuit in its Opinion, the Plaintiffs must show some evidence of detrimental reliance to succeed on a claim under Section 323.[4] Even construing the facts in the light most favorable to the Plaintiffs, there does not exist sufficient evidence of reliance by Tracy or Comer on any alleged representations or actions of the Army that caused Tracy or Comer to suffer harm.

The evidence provided by the Plaintiffs on the issue of reliance, at best, constitutes mere speculation, which is insufficient to create a genuine issue of fact on the matter. For example, the Plaintiffs argue that "one can [ ] reasonably infer" that Tracy was imparted with "a certain measure of confidence," that the Army would protect Tracy because Tracy talked to an Army Case Assessment Manager regarding the May 2007 domestic violence incident. Yet, even if this conversation did impart some "confidence" in Tracy that the Army was investigating Burke, it does not indicate that Tracy somehow acted – or failed to act – in reliance upon the investigation.

Further, documents suggest that Tracy wanted an emergency protection order, but no such order was granted by the Army. (DN 90-4, 11 – 13.) Neither is there evidence that the Army told Tracy that it did or would issue such an order. (*Id.*) Thus, a jury could not find from the evidence that Tracy reasonably relied upon a representation of the Army that it would issue an emergency protection order for her protection.[5]

---

[4] The Plaintiffs' response to the motion for summary judgment argues that sufficient evidence exists under Section 323(b), which requires harm to be suffered because of reliance on a voluntary undertaking. While the Plaintiffs' response, at times, references the language of Section 323(a), the Plaintiffs have not attempted to provide evidence to support a claim under Section 323(a).

[5] Tracy, in her Complaint for Absolute Divorce, also requested that a Restraining Order be issued by the Chancery Court for Montgomery County, Tennessee. (DN 90-16, 3.) The evidence does not indicate whether this Court issued a Restraining Order.

Next, there is no evidence that Tracy relied upon the Army to secure Burke's privately owned weapons. Communications between Burke's command and Tracy indicate that Tracy was aware that Burke had weapons in the home. (DN 90-4, 12.) Further, while evidence shows that an Army officer kept Burke's 9mm pistol at his home for a brief period in August of 2007, there is no indication that Tracy was aware that this officer had Burke's weapon in his possession, or that she relied upon the officer to keep it from Burke for her safety. (*Id.* at 13; DN 95-1.)

The Plaintiffs also contend that Tracy's reliance is evident through her communications with co-workers, but affidavits only indicate that Tracy told multiple co-workers that she feared Burke and was communicating with Fort Campbell about her fears. (DN 90-17; DN 90-18.) Once again, as stated by the Sixth Circuit, merely communicating with the Army about Burke's behavior does not indicate that Tracy relied upon an undertaking or representation by the Army that it would protect her.

Lastly, to the extent that Tracy relied upon any specific undertakings of the Army, these examples are not relevant to whether Tracy relied upon the Army for her safety at the time of the murder. After Burke moved into the barracks following the May 2007 domestic violence incident, the Plaintiffs allege that Tracy relied on the Army to provide a military police escort to accompany Burke when he returned to the Burkes' marital home to retrieve some personal items. (DN 90-9, 2.) Even in the light most favorable to the Plaintiffs, this only indicates that Tracy relied upon a specific action immediately following the domestic violence incident, not that she relied on the Army's continual protection after moving out of the marital home.

To the contrary, available evidence indicates that Tracy did *not* rely on the Army to protect her at the time of the murder. Tracy's Complaint for Absolute Divorce, filed on May 30,

2007, states that "[c]omplainant fears that when [Burke] is released from the barracks, he will return home and irreparable injury will occur to her and the parties' minor children." (DN 90-16, 4.) Tracy was thus aware that the Army would not continue to hold Burke in the barracks indefinitely for her protection. Similarly, an affidavit by one of Tracy's co-workers stated that Tracy had talked to Fort Campbell about her fear of Burke, but conceded that "[the reports to Fort Campbell] would not stop him." Perhaps most significantly, Tracy did not continue to live at or near the Burkes' marital home in Clarkesville, Tennessee. There is no dispute that when she was killed on September 11, 2007, Tracy and her children were staying at the home of Comer in Rineyville, Kentucky. This evidence contradicts the Plaintiffs' tenuous and generalized allegations of reliance at the time of the murder.

In sum, the Plaintiffs' evidence assumes that Tracy relied upon the Army because she had communicated her fears to the Army, was aware that the Army had implemented Policy 7 regulations, and knew that it pursued an investigation in response to the May 2007 incident. The Plaintiffs have pointed to no statements or actions by Tracy reasonably indicating detrimental reliance on a voluntary undertaking of the Army to protect her at the time of her death. Additionally, the Plaintiffs' response to the Defendant's motion emphasizes how the Army could or should have acted differently under the circumstances. Yet, alleged deficiencies in the Army's handling of the situation, alone, cannot establish liability. While the murders of Tracy and Comer at the hands of Burke certainly are tragic, the available evidence does not indicate that the Army took any actions to protect Tracy or Comer upon which they relied pursuant to Section 323. Without such evidence, a reasonable trier of fact could not find for the Plaintiffs on their claims. The court will grant the Defendant's motion for summary judgment and this action will be dismissed.

## IV.   CONCLUSION

For the reasons stated, the court will **GRANT** the Defendant's motion for summary judgment and **DISMISS** with prejudice the Amended Complaint.

An order will be entered in accordance with this opinion.

July 30, 2018

**Charles R. Simpson III, Senior Judge**
**United States District Court**